**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Hunter G Benharris
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **FREDDY VASQUEZ, and CRISTAL MELENDEZ, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br>**-against-**<br><br>**MEDRITE, LLC, and STAFFING BOUTIQUE, INC.**<br><br>**Defendants.** | **No.**<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

\

Freddy Vasquez and Cristal Melendez ("Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1. This lawsuit seeks to recover underpayment caused by failure to pay overtime compensation and other damages for Plaintiffs and similarly situated non-exempt hourly positions including but not limited to generalists (collectively, "Generalists"), who work or have worked for MedRite, LLC and Staffing Boutique, Inc. (together "MedRite" or "Defendants").

2. This lawsuit also seeks to recover unpaid overtime compensation and other damages for Plaintiffs and similarly situated co-workers – salaried Site Managers ("Site Managers") - who work or have worked for Defendants.

3. This lawsuit further seeks to recover damages for Plaintiffs and similar employees

(collectively, "NY Employees") who work, or have worked, for Defendants in New York and have been subjected to an unlawful absence control policy, which subjected Plaintiffs and similarly situated NY Employees to demerits, suspension, and termination due to legally protected absences.

4. Plaintiffs seek to protect Generalists, Site Managers, and NY Employees (all together "MedRite Employees") from the various unlawful and draconian wage and hour policies that Defendants impose upon them in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

5. To conduct their operations in New York, MedRite LLC utilizes Staffing Boutique, Inc. as a subcontracting company that provides the workers for MedRite LLC's jobsites.

6. Plaintiffs and similarly situated MedRite Employees worked for MedRite LLC via Staffing Boutique, Inc.

7. Ultimately, however, MedRite LLC and Staffing Boutique, Inc are joint employers of Plaintiffs and other MedRite Employees.

8. MedRite LLC's logo is clearly displayed on the pay records provided to Plaintiffs and similarly situated MedRite Employees. *See* **Exhibit A,** Vasquez Paystubs, **Exhibit B**, Melendez Paystubs.

9. Employment Offer letters provided to Plaintiffs and similarly situated MedRite Employees bear both MedRite LLC's letterhead and Staffing Boutique, Inc.'s name. *See* **Exhibit C**, Offer Letters.

10. MedRite LLC provides an Employee Handbook with their employment policies to Plaintiffs and similarly situated MedRite Employees. *See* **Exhibit D**, Employee Handbook.

11. MedRite LLC posts job advertisements online for their positions which describe the job duties and requirements of employment at MedRite LLC. *See* **Exhibit E**, Job

Advertisements.

12. Plaintiffs and similarly situated MedRite Employees wore uniforms and ID Badges with MedRite LLC's logo.

13. MedRite LLC has represented to New York City's Health and Hospital Finance Committee that they subcontract through Staffing Boutique, Inc. to provide their services. *See* **Exhibit F**, Finance Committee Report.

14. WARN notices provided by the City of New York describe Staffing Boutique, Inc. as "MedRite Staffing Boutique" in reference to MedRite LLC's joint control of employees with Staffing Boutique, Inc. *See* **Exhibit G**.

15. Plaintiffs and similarly situated MedRite Employees hired by Defendants only work at job sites controlled by MedRite, LLC.

16. The work of MedRite Employees is integral to MedRite LLC's business.

17. MedRite LLC provides strict guidelines and instructions to MedRite Employees. These guidelines, printed on MedRite LLC's letterhead, provide detailed instructions that all MedRite Employees must follow and control their day-to-day job performance. *See* **Exhibit D**

18. At all relevant times, Defendants compensated Plaintiffs and all other Generalists on an hourly basis.

19. At all relevant times, Defendants have paid Plaintiffs and all other Generalists non-discretionary bonuses, including, but not limited to, shift differentials. *See* **Exhibit A, Exhibit B**.

20. These non-discretionary payments are based solely on the schedule worked by Plaintiffs and all similarly situated Generalists, and are not up to the discretion of their managers. *See* **Exhibit H**, Text Message from Plaintiffs' Managers.

21. At all relevant times, Defendants paid Plaintiffs and all other Generalists an

overtime rate that failed to properly calculate these nondiscretionary bonuses, as required by law.

22. Plaintiffs bring this action on behalf of themselves and similarly situated current and former Generalists who elect to opt-in to this action pursuant to the FLSA, and specifically, the collective action provision of 29 U.S.C. § 216(b) to remedy violations of the wage-and-hour provisions of the FLSA by MedRite that have deprived Plaintiffs and similarly situated employees of their lawfully earned wages.

23. Plaintiffs also bring this action on behalf of themselves and similarly situated Generalists in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the NYLL.

24. In furtherance of their operations, Defendants employ Site Managers paid on a salary basis.

25. Plaintiffs were both "promoted" from the role of Generalist to Site Manager during their time working for MedRite. Despite this, very little about Plaintiffs' responsibilities changed.

26. Plaintiffs and similarly situated Site Managers worked generally 12 hours shifts 4 to 5 days per week, regularly working over forty hours per week.

27. In order to avoid paying Site Managers overtime for hours worked in excess of 40 per workweek, Defendants uniformly misclassified the position as exempt from the overtime protections of the FLSA and the NYLL.

28. Despite this classification, Plaintiffs and similarly situated Site Managers have non-exempt primary duties.

29. In this regard, Site Managers have non-exempt primary duties that involve printing identification papers, serving meals, carrying luggage, and providing room service to migrants in hotel rooms. Moreover, Site Managers cannot hire or fire employees, nor are they involved in the

interview, scheduling or, payroll approval process for any other employees.

30. As such, Site Managers are non-exempt employees under the FLSA and the NYLL.

31. Plaintiffs bring this action on behalf of themselves and similarly situated current and former Site Managers who elect to opt-in to this action pursuant to the FLSA, and specifically, the collective action provision of 29 U.S.C. § 216(b) to remedy violations of the wage-and-hour provisions of the FLSA by MedRite that have deprived Plaintiffs and similarly situated employees of their lawfully earned wages.

32. Plaintiffs also bring this action on behalf of themselves and similarly situated Site Managers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the NYLL.

33. Defendants failed to provide Plaintiffs and similarly situated Generalists and Site Managers with an accurate statement of wages pursuant to NYLL § 195(3).

34. Plaintiffs relied on their paystubs to ensure that Defendants paid them the correct rate for the hours they worked.

35. Defendants did not provide Plaintiffs with accurate wage statements as Defendants either provided wage statement that did not reflect the correct amount of overtime owed to Plaintiffs. In this regard, the failure to provide Plaintiffs with wage statements violated NYLL § 195(3).

36. Due to Defendants' failure to provide the wage statements to Plaintiffs, and similarly situated Generalists and Site Managers in New York, were misinformed about the correct overtime rate they were entitled to receive and hours they worked.

37. Defendants' incorrect wage statements allowed Defendants to continue their unlawful wage and hour scheme without Plaintiff's or similarly situated Generalists' and Site

Managers' awareness that they were being underpaid. Accordingly, Plaintiffs and similarly situated Generalists and Site Managers in New York are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, up to a total of five thousand dollars each pursuant to NYLL § 195(3).

38. Defendants further maintain a draconian absence control system that punishes workers for unscheduled absences, regardless of whether or not those absences are protected under the law. This system harms workers, as Plaintiffs can attest. Plaintiffs experienced the effects of Defendants' punitive and unlawful policy when they incurred discipline for time off for absences legally protected under New York State law. Defendants blatantly disregarded the law and frustrated its purpose of protecting hard working New Yorkers from being fired or penalized when they need a temporary, reasonable accommodation.

39. To combat abusive absence control systems such as those utilized by MedRite, on November 21, 2022, Governor Kathy Hochul signed into law Senate Bill S1958A, which amended Section 215 of the New York Labor Law (NYLL) to strengthen protections for workers who take legally protected absences. The amendment prohibits employers from "assessing any demerit, occurrence, any other point, or deductions from an allotted bank of time, which subjects or could subject an employee to disciplinary action" based upon the use of "any legally protected absence pursuant to federal, local, or state law." The law likewise makes it unlawful for employers to fire, threaten, or otherwise discriminate or retaliate against workers for their use of lawful absences. This law took effect on February 19, 2023. *See* NYLL § 215.

40. This lawsuit seeks to recover damages for Plaintiffs and similar New York Employees who work, or have worked, for MedRite in New York State and have been subjected to an unlawful absence control policy, which subjected Plaintiffs and similarly situated NY

Employees to demerits, suspension, and termination due to legally protected absences.

41. Defendants terminated or threatened to terminate, suspend, or otherwise punish Plaintiffs and similarly situated NY Employees if they took absences due to legally protected illness, sickness and/or disability.

42. Defendants' threats to terminate, suspend, or otherwise punish Plaintiffs and similarly situated NY Employees if they took absences due to legally protected illness, sickness and/or disability caused Plaintiffs and NY Employees to show up to work despite the detrimental effects to their overall health or the overall health of their families.

43. Plaintiffs and NY Employees who were forced to work shifts while medically unfit suffered complications and exacerbations to ongoing illnesses, sicknesses and/or disabilities, and suffered further discomfort due to being forced to work.

44. Defendants maintain these policies despite the clear requirements of NYLL § 215; NYLL § 196-B; N.Y. Human Rights Law §§ 292.21 *et seq.*; and 9 C.R.R. N.Y. 466.11.

## THE PARTIES

### Plaintiffs

#### Freddy Vasquez

45. Freddy Vasquez ("Vasquez") is an adult individual who is a resident of the state of New Jersey.

46. Vasquez was employed by Defendants as a Generalist from in or around September 2023 to in or around August 2024.

47. Vasquez was employed as a Site Manager from in or around August 2024 to in or around December 2024.

48. Vasquez is a covered employee within the meaning of the FLSA and the NYLL.

49. A written consent for Vasquez is being filed with this Class Action Complaint.

**Cristal Melendez**

50. Cristal Melendez ("Melendez") is an adult individual who is a resident of the state of New York.

51. Melendez was employed by Defendants as a Generalist from in or around March 15, 2023 to in or around July 2023.

52. Melendez was employed as a Site Manager from in or around July 2023 to in or around January 2025.

53. Melendez is a covered employee within the meaning of the FLSA and the NYLL.

54. A written consent for Melendez is being filed with this Class Action Complaint.

**Defendants**

**MedRite, LLC**

55. MedRite LLC is a domestic business corporation organized and existing under the laws of New York.

56. MedRite LLC's principal executive office is located at 919 2nd Avenue New York, New York 10017.

57. MedRite LLC was and is a covered employer within the meaning of the NYLL, and at all times relevant, employed Plaintiffs and similarly situated employees.

58. MedRite LLC has maintained control, oversight, and direction over Plaintiffs and similar employees, including timekeeping, payroll, and other employment practices that applied

to them.

59. MedRite LLC applies the same employment policies, practices, and procedures to all workers in its operation, including policies, practices, and procedures with respect to payment of wages.

60. Upon information and belief, at all relevant times, MedRite LLC has had an annual gross volume of sales in excess of $500,000.

61. At all times relevant, MedRite LLC has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

62. In this regard, employees for MedRite LLC regularly handled goods in interstate commerce, including, but not limited to, medical supplies, foodstuffs, water bottles, and other supplies produced outside the State of New York.

**Staffing Boutique, Inc.**

63. Staffing Boutique, Inc. is a domestic business corporation organized and existing under the laws of New York.

64. Staffing Boutique, Inc.'s principal executive office is located at 99 Hudson Street, 5th Floor, New York, New York 10013

65. Staffing Boutique, Inc. was and is a covered employer within the meaning of the NYLL, and at all times relevant, employed Plaintiffs and similarly situated employees.

66. Staffing Boutique, Inc. has maintained control, oversight, and direction over Plaintiffs and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

67. Staffing Boutique, Inc. applies the same employment policies, practices, and procedures to all workers in its operation, including policies, practices, and procedures with respect

to payment of wages.

68. Upon information and belief, at all relevant times, Staffing Boutique, Inc. has had an annual gross volume of sales in excess of $500,000.

69. At all times relevant, Staffing Boutique, Inc. has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

70. In this regard, employees for Staffing Boutique, Inc. regularly handled goods in interstate commerce, including, but not limited to, medical supplies, foodstuffs, water bottles, and other supplies produced outside the State of New York.

## JURISDICTION AND VENUE

71. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

72. This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

73. This Court also has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendants in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one Plaintiff is a citizen of a state different from that of Defendants.

74. There are over 100 members in the proposed class.

75. Defendants are subject to personal jurisdiction in New York.

76. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

## COLLECTIVE ACTION ALLEGATIONS

77. Plaintiffs bring the First Cause of Action, an FLSA claim, on behalf of themselves and all similarly situated persons who work or have worked as Generalists for MedRite in the United States between November 11, 2022 and the date of final judgment in this matter who elect to opt-in to this action (the "Generalist Collective").

78. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the Generalist Collective for overtime wages for hours worked.

79. Consistent with Defendants' policies and patterns or practices, Plaintiffs and the Generalist Collective were not paid the proper premium overtime compensation of 1.5 times their regular rates of pay, including earned non-discretionary bonuses, for all hours worked beyond 40 per workweek.

80. Plaintiffs bring the Second Cause of Action, an FLSA claim, on behalf of themselves and all similarly situated persons who work or have worked as Site Managers for MedRite in the United States between November 11, 2022 and the date of final judgment in this matter who elect to opt-in to this action (the "Site Manager Collective").

81. Consistent with Defendants' policies, patterns, or practices, Plaintiffs and the Site Manager Collective were not paid the premium overtime compensation for all hours worked beyond 40 per workweek.

82. All of the work that Plaintiffs, the Generalist Collective, and Site Manager Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs, the Generalist Collective, and Site Manager Collective have performed.

83. As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to

Plaintiffs, the Generalist Collective, and Site Manager Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiffs and the FLSA Collective, and proper overtime wages for all hours worked in excess of 40 hours per workweek.

84. An employer "willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *See Young v. Cooper Cameron Corp.*, 586 F. 3d 201, 207 (2d Cir. 2009).

85. According to *Whiteside v Hover-Davis*, "a claim is facially plausible 'when the Plaintiffs pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *See* 995 F.3d 315, 323 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "For a plaintiff to nudge their claim 'across the line from conceivable to plausible,' [they] must 'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *See Id.* (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1995)).

86. Defendants knew or should have known that their wage and hour practices with regards to Generalists violated the FLSA's overtime requirements. In this regard, district courts around the country, including district courts throughout New York, have repeatedly ruled that non-discretionary bonuses must be factored into a worker's overtime rate.

87. Moreover, Defendants knew or should have known that their wage and hour practices with regards to Site Managers violated the FLSA's overtime. In this regard, district courts around the country, including district courts throughout New York, have repeatedly ruled that salaried employees must meet an FLSA exemption to be denied premium overtime compensation.

88. To support their operations, Defendants either employ or contract multiple attorneys with the specific job duties of ensuring compliance with federal and state labor laws, or Defendants recklessly disregard these laws.

89. Accordingly, it is clear that Defendants recklessly disregarded the law, because their substantial operation size does not allow for mere ignorance of their flagrant violation of the FLSA.

90. Defendants have faced previous actions accusing them of violating the FLSA's overtime requirements, and yet have not changed their illegal pay policies. *See e.g. Bodiford v. MedRite Midtown West LLC*, No. 24 Civ. 5758 (LGS) (S.D.N.Y. July 30, 2024); *Velez v. MedRite LLC*, No. 24 Civ. 2707 (GHW) (SN) (S.D.N.Y. April 10, 2024).

91. As such, Defendants' failure to pay overtime wages to Plaintiffs, the Generalist Collective, and Site Manager Collective constitute willful violations of the FLSA.

## NEW YORK CLASS ACTION ALLEGATIONS

92. Plaintiffs bring the Third, and Fourth, Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as Generalists for Defendants in New York between March 28, 2019[1] and the date of final judgment in this matter (the "Generalist Class").

93. The members of the Generalist Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

94. There are more than one hundred members of the Generalist Class.

[1] This class period is due to Governor Cuomo's Executive Order that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op. 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law).

95. Plaintiffs' claims are typical of those claims that could be alleged by any member of the Generalist Class, and the relief sought is typical of the relief which would be sought by each member of the Generalist Class in separate actions.

96. Plaintiffs and the Generalist Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected everyone in the Generalist Class similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each member of the Generalist Class.

97. Plaintiffs are able to fairly and adequately protect the interests of the Generalist Class and have no interests antagonistic to the Generalist Class.

98. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

99. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

100. Common questions of law and fact exist as to the Generalist Class that predominate over any questions only affecting Plaintiffs and/or each member of the Generalist Class individually and include, but are not limited to, the following:

(a) Whether Defendants correctly compensated Plaintiffs and the

Generalist Class for hours worked in excess of 40 per workweek;

(b) whether Defendants failed to furnish Plaintiffs and the Generalist Class with accurate statements with every payment of wages, as required by the NYLL.

101. Plaintiffs bring the Fifth and Sixth, Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as Site Managers for Defendants in New York between March 28, 2019[2] and the date of final judgment in this matter (the "Site Manager Class").

102. The members of the Site Manager Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

103. There are more than one hundred members of the Site Manager Class.

104. Plaintiffs' claims are typical of those claims that could be alleged by any member of the Site Manager Class, and the relief sought is typical of the relief which would be sought by each member of the Site Manager Class in separate actions.

105. Plaintiffs are able to fairly and adequately protect the interests of the Site Manager Class and have no interests antagonistic to the Site Manager Class.

106. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

---

[2] This class period is due to Governor Cuomo's Executive Order that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op. 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law).

107. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

108. Common questions of law and fact exist as to the Site Manager Class that predominate over any questions only affecting Plaintiffs and/or each member of the Site Manager Class individually and include, but are not limited to, the following:

(a) Whether Defendants correctly compensated Plaintiffs and the Site Manager Class for hours worked in excess of 40 per workweek;

(b) whether Defendants failed to furnish Plaintiffs and the Site Manager Class with accurate statements with every payment of wages, as required by the NYLL.

109. Plaintiffs bring the Seventh Cause of Action on behalf of all persons who work or have worked for MedRite in New York between November 11, 2023 and the date of final judgment in this matter who were subject to Defendants' Absence Policy (the "NYLL § 215 Class")

110. The members of NYLL § 215 Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

111. There are more than three hundred members of the NYLL § 215 Class.

112. Plaintiffs' claims are typical of those claims that could be alleged by any member of the NYLL § 215 Class, and the relief sought is typical of the relief which would be sought by each member of the NYLL § 215 Class in separate actions.

113. Plaintiffs and NYLL § 215 Class have all been terminated, suspended, or otherwise

disciplined, or threatened to be terminated, suspended, or otherwise disciplined, due to Defendants' unlawful attendance policy. Defendants' corporate-wide policies and practices affected everyone in the NYLL § 215 Class similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each member of the NYLL § 215 Class.

114. Plaintiffs are able to fairly and adequately protect the interests of the NYLL § 215 and have no interests antagonistic to the NYLL § 215 Class.

115. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in employment cases.

116. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

117. Common questions of law and fact exist as to the NYLL § 215 Class that predominate over any questions only affecting Plaintiffs and/or each member of the NYLL § 215 Class individually and include, but are not limited to, the following:

(a) whether Defendants applied an unlawful attendance policy to terminate, suspend, or otherwise discipline Plaintiffs and the NYLL § 215 Class, or threatened to terminate, suspend, or otherwise discipline Plaintiffs and the NYLL § 215 Class.

**PLAINTIFFS' FACTUAL ALLEGATIONS**

118. Consistent with their policies and patterns or practices as described herein,

Defendants harmed Plaintiffs, individually, as follows:

**Freddy Vasquez**

119. From approximately September 2023 to approximately August 2024., Vasquez was employed by Defendants as a Generalist in New York.

120. During his employment as a Generalist, Vasquez frequently worked over 40 hours per week. In weeks where Vasquez worked over 40 hours per week and bonuses, Defendants failed to calculate the overtime rate including non-discretionary night shift differentials.

121. For example, for the pay period of February 11, 2024 to February 17, 2024, Vasquez worked approximately 54 hours and 11 minutes and was paid a rate $22.00 per hour plus additional non-discretionary differential payments totaling $125.90. Accordingly, Vasquez's regular rate was $24.32 for this pay period. *See* **Exhibit A**.

122. Vasquez worked 14 hours and 11 minutes of overtime during the pay period of February 11, 2024 to February 17, 2024, and was accordingly owed an overtime premium of $517.29. However, Defendants only paid him $468.05 or in other words, he was underpaid by $49.24 for this pay period. *See* **Exhibit A**.

123. In addition, for the pay period of December 24, 2023 to December 30, 2023, Vasquez worked approximately 46 hours and 8 minutes and was paid a rate $22.00 per hour for plus additional non-discretionary differential payments totaling $72.32. Accordingly, Vasquez's regular rate was $23.57 for this pay period. *See* **Exhibit A**.

124. Vasquez worked 6 hours and 8 minutes of overtime during the pay period of December 24, 2023 to December 30, 2023, and was accordingly owed an overtime premium of $216.73. However, Defendants only paid him $202.40 or in other words, he was underpaid by $14.43 for this pay period. *See* **Exhibit A**.

125. From approximately August 2024 to approximately December 2024, Vasquez was employed by Defendants as a Site Manager in New York.

126. During the course of his time as a Site Manager Vasquez regularly worked 12 hours shifts four to five days a week for a total of 48 to 60 hours a week.

127. Despite regularly working over 40 hours per workweek, Defendants paid Vasquez with a salary, regardless of the number of hours worked.

128. For example, during the pay period of November 18, 2024 to November 24, 2024, Vasquez worked over fifteen hours of overtime, and did not receive any premium overtime compensation.

129. Furthermore, during the pay period of November 10, 2024 to November 16, 2024, Vasquez again worked over five hours of overtime and did not receive any premium overtime compensation.

130. Vasquez's primary duties as a Site Manager were not substantially different from his time as a generalist, he was tasked with printing identification papers, serving meals, carrying luggage, and providing room service to migrants in hotel rooms.

131. As a Site Manager, Vasquez could not hire, fire, nor were any recommendations given any particular weight by Defendants.

132. As a Site Manager, Vasquez was not responsible for creating schedules, nor was involved in payroll processing or approval.

133. Vasquez was required to perform his job in strict compliance with Defendants' company policies. Defendants prohibit their employees from varying outside of the predetermined job duties and routine paperwork/checklists.

134. As such, Vasquez's primary job duties as a Site Manager were non-exempt duties

under the FLSA and NYLL.

135. Therefore, Defendants' failure to provide Vasquez premium overtime compensation violates the FLSA and NYLL.

136. Throughout his employment, Defendants failed to provide Vasquez with accurate wage statements with each payment of wages as required by the NYLL.

137. The failure to provide pay statements allowed Defendants to continue to carry on a scheme of underpaying Vasquez and similarly situated workers. Throughout his employment, Defendants failed to provide Vasquez with accurate wage statements with each payment of wages as required by the NYLL, because the wage statements provided to Vasquez by Defendants failed to notate Plaintiff's lawful overtime rate.

138. Defendants' failure to provide Vasquez with accurate wage statements misinformed Vasquez about the correct overtime rate he was entitled to receive, which allowed Defendants to continue their unlawful pay scheme.

139. During his employment, Vasquez was subject to an unlawful attendance policy by Defendants, which required doctor's notes for callouts in violation of NYLL § 196-B. *See* **Exhibit I**, Defendants' Call Out Policy.

140. Defendants informed Vasquez that if he called out without a doctor's note he could be terminated, suspended, or otherwise disciplined.

141. When Vasquez called out of work due to an illness without a Doctor's Note, he was disciplined for this with a write up and the threat of termination by his manager Charmaine Romaine.

142. During his employment by Defendants, Vasquez would often report to work despite suffering from sickness, illness, or disability, because Defendants threatened to terminate or

otherwise discipline him for being absent regardless of the cause in violation of NYLL § 196-B; N.Y. Human Rights Law §§ 292.21 *et seq.*; and 9 C.R.R. N.Y. 466.11.

143. When Vasquez reported to work despite suffering from sickness, illness, and/or disability he would suffer from physical discomfort and detrimental effects to his overall health.

144. Vasquez suffered complications and exacerbations to ongoing illnesses, sicknesses and/or disabilities due to being forced to work while sick, ill, and/or disabled.

**Cristal Melendez**

145. From approximately March 15, 2023 to approximately July 2023, Melendez was employed by Defendants as a Generalist in New York.

146. During her employment as a Generalist, Melendez frequently worked over 40 hours per week. In weeks where Melendez worked over 40 hours per week and bonuses, Defendants failed to calculate the overtime rate including non-discretionary night shift differentials.

147. For example, for the pay period of May 14, 2023 to May 20, 2023, Melendez worked approximately 46 hours and 58 minutes was paid a rate $25.00 per hour plus additional non-discretionary differential payments totaling $128.00 Accordingly, Melendez's regular rate was $27.73 for this pay period. *See* **Exhibit B**.

148. Melendez worked 6 hours and 58 minutes of overtime during the pay period of May 14, 2023 to May 20, 2023, and was accordingly owed an overtime premium of at least $289.92. However, Defendants only paid her $261.61 or in other words, she was underpaid by at least $28.31 for this pay period. *See* **Exhibit B.**

149. From approximately July 2023 to approximately January 2025, Melendez was employed by Defendants as a Site Manager in New York.

150. During the course of her time as a Site Manager, Melendez regularly worked 12

hours shifts four days a week for a total of 48 hours a week.

151. Despite regularly working over 40 hours per workweek, Defendants paid Melendez with a salary, regardless of the number of hours worked.

152. For example, during the pay period of September 9, 2024 to September 15, 2024, Melendez worked 8 hours of overtime, and did not receive any premium overtime compensation.

153. Furthermore, during the pay period of March 9, 2024 to March 15, 2024, Melendez worked 8 hours of overtime, and did not receive any premium overtime compensation.

154. Melendez's primary duties as a Site Manager were not substantially different to her time as a generalist, she was tasked with printing identification papers, serving meals, carrying luggage, and providing room service to migrants in hotel rooms.

155. As a Site Manager, Melendez could not hire, fire, nor were any recommendations given any particular weight by Defendants.

156. As a Site Manager, Melendez was not responsible for creating schedules, nor was involved in payroll processing or approval.

157. Melendez was required to perform her job in strict compliance with Defendants' company policies. Defendants prohibit their employees from varying outside of the predetermined job duties and routine paperwork/checklists.

158. As such, Melendez's primary job duties as a Site Manager were non-exempt duties under the FLSA and NYLL.

159. Therefore, Defendants' failure to provide Melendez premium overtime compensation violates the FLSA and NYLL.

160. Throughout her employment, Defendants failed to provide Melendez with accurate wage statements with each payment of wages as required by the NYLL.

161. The failure to provide pay statements allowed Defendants to continue to carry on a scheme of underpaying Melendez and similarly situated workers. Throughout her employment, Defendants failed to provide Melendez with accurate wage statements with each payment of wages as required by the NYLL, because the wage statements provided to Melendez by Defendants failed to notate Plaintiff's lawful overtime rate.

162. Defendants' failure to provide Melendez with accurate wage statements misinformed Melendez about the correct overtime rate she was entitled to receive, which allowed Defendants to continue their unlawful pay scheme.

163. During her employment, Melendez was subject to an unlawful attendance policy by Defendants, which required doctor's notes for callouts in violation of New York Law. *See* **Exhibit I**.

164. Defendants informed Melendez via her managers that if she called out without a doctor's note she could be terminated, suspended, or otherwise disciplined. *See* **Exhibit J**, Manager Text Message Regarding Call-Out.

165. On or about October 11, 2024, Melendez called out of work due to an illness suffered by her son that required immediate medical attention, was disciplined for this with a write up.

166. Furthermore, on November 27, 2024, Melendez called out of work due to illness, and was disciplined for not having a doctor's note. *See* **Exhibit K**, Call Out Notification.

167. During her employment by Defendants, Melendez would often report to work despite suffering from sickness, illness, or disability, or with her son suffering from sickness, illness, or disability because Defendants threatened to terminate or otherwise discipline her for being absent regardless of the cause in violation of NYLL 196-B; N.Y. Human Rights Law §§

292.21 *et seq.*; and 9 C.R.R. N.Y. 466.11.

168. When Melendez reported to work despite suffering from sickness, illness, and/or disability she would suffer from physical discomfort and detrimental effects to her overall health.

169. Melendez suffered complications and exacerbations to ongoing illnesses, sicknesses and/or disabilities due to being forced to work while sick, ill, and/or disabled.

170. Melendez was terminated in or about January 2025, directly after inquiring about the application of Defendants' unlawful sick time policies.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiffs and the Generalist Collective)**

171. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

172. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the members of Generalist Collective.

173. Plaintiffs and the Generalist Collective worked in excess of 40 hours during workweeks in the relevant period.

174. Defendants failed to pay Plaintiffs and the Generalist Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay for all hours worked in excess of 40 per workweek.

175. As a result of Defendants' willful violations of the FLSA, Plaintiffs and the Generalist Collective have suffered damages by being denied proper overtime compensation in amounts to be determined at trial, and are entitled to recovery of liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**<u>SECOND CAUSE OF ACTION</u>**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiffs and the Site Manager Collective)**

176. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

177. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the members of Site Manager Collective.

178. Plaintiffs and the Site Manager Collective worked in excess of 40 hours during workweeks in the relevant period.

179. Defendants failed to pay Plaintiffs and the Site Manager Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay for all hours worked in excess of 40 per workweek.

180. As a result of Defendants' willful violations of the FLSA, Plaintiffs and the Site Manager Collective have suffered damages by being denied proper overtime compensation in amounts to be determined at trial, and are entitled to recovery of liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**<u>THIRD CAUSE OF ACTION</u>**
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiffs and the Generalist Class)**

181. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

182. The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiffs and the Generalist Class.

183. Defendants failed to pay Plaintiffs and the Generalist Class the premium overtime

wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rate of pay, including bonuses – for all hours worked beyond 40 per workweek.

184. Due to Defendants' violations of the NYLL, Plaintiffs and the Generalist Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiffs and the Generalist Class)**

185. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

186. Defendants failed to supply Plaintiffs and the Generalist Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and minimum rate or rates of pay if applicable; the number of hours worked per week, including hours worked if applicable; deductions; and net wages.

187. Due to Defendants' violations of NYLL § 195(3), Plaintiffs and the Generalist Class are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198.

## FIFTH CAUSE OF ACTION
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiffs and the Site Manager Class)**

188. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

189. The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiffs and the Site Manager Class.

190. Defendants failed to pay Plaintiffs and the Site Manager Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rate of pay, including bonuses – for all hours worked beyond 40 per workweek.

191. Due to Defendants' violations of the NYLL, Plaintiffs and the Site Manager Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

## SIXTH CAUSE OF ACTION
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiffs and the Site Manager Class)**

192. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

193. Defendants failed to supply Plaintiffs and the Site Manager Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any,

claimed as part of the minimum wage; hourly rate or rates of pay and minimum rate or rates of pay if applicable; the number of hours worked per week, including hours worked if applicable; deductions; and net wages.

194. Due to Defendants' violations of NYLL § 195(3), Plaintiffs and the Site Manager Class are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198.

**SEVENTH CAUSE OF ACTION**
**New York Labor Law – Unlawful Retaliation**
**(Brought on behalf of Plaintiffs and the NYLL § 215 Class)**

196. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

197. The provisions of NYLL § 215 and its supporting regulations apply to Defendant and protect Plaintiffs and the NYLL § 215 Class.

198. The provisions of NYLL § 196-B; N.Y. Human Rights Law §§ 292.21 *et seq.*; and 9 C.R.R. N.Y. 466.11 apply to Defendant and protect Plaintiffs and the NYLL § 215 Class.

195. Defendants terminated, suspended, punished, or threatened to terminate, suspend, or otherwise punish Plaintiffs and similarly situated NY Employees if they took absences due to legally protected illness, sickness and/or disability.

199. Due to Defendant's violations of the NYLL, Plaintiffs and the NYLL § 215 Class are entitled to recover from Defendant front pay, back pay, liquidated damages up to $20,000 each, and reasonable attorneys' fees and costs, as provided for by NYLL § 215.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A. That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all Generalists, and similar hourly positions companywide who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked for Defendants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B. That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all Site Managers, and similar positions companywide who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked for Defendants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

C. Unpaid overtime compensation, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

D. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

E. Designation of Plaintiffs as representatives of the Generalist Class and counsel of record as Class Counsel;

F. Designation of Plaintiffs as representatives of the Site Manager Class and counsel of record as Class Counsel;

G. Designation of Plaintiffs as representatives of the NYLL § 215 Class and counsel of record as Class Counsel;

H. Unpaid overtime wages and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

I. Liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

J. Statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiffs, the Generalist Class, and the Site Manager Class with accurate wage statements, or a total of five thousand dollars each, as provided for by the NYLL;

K. Front pay; back pay; and liquidated damages up to 20,000 per class member pursuant to NYLL § 215;

L. Prejudgment and post-judgment interest; and

M. Reasonable attorneys' fees and costs of the action.

Dated: New York, New York
November 11, 2025

Respectfully submitted,

*/s/ Brian S. Schaffer*
Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Hunter G Benharris
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiffs and the Putative Class*